# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| LEAF FUNDING, INC., ) | |
|         Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:08-CV-345-PRC |
| ) | |
| BROGAN PHARMACEUTICALS, ) | |
| INC. and BRETT DINES, ) | |
|         Defendants. ) | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff LEAF Funding, Inc.'s Motion for Summary Judgment [DE 17], filed by Plaintiff LEAF Funding, Inc. ("LEAF") on April 17, 2009. For the reasons set forth in this Order, the Court grants LEAF's Motion for Summary Judgment on liability and damages but orders further briefing on the calculation of damages owed to LEAF jointly and severally by Defendants.

## PROCEDURAL BACKGROUND

On December 1, 2008, LEAF filed its Complaint against Brogan Pharmaceuticals, Inc. ("Brogan") and Brett Dines ("Dines") (collectively "Defendants"), alleging that Brogan defaulted on an Equipment Lease Agreement ("Agreement" or "Lease Agreement") for certain medical equipment ("Equipment"), for which Dines had personally guaranteed payment. In the First Claim for Relief for Breach of the Lease Agreement, LEAF alleges that Brogan is in default on the Lease Agreement because it failed to make payments under the Agreement and that, as a result, Brogan owes LEAF the sum of $87,681.24, plus interest at the rate of 15% per annum, late fees, reasonable collection costs, and attorney's fees. In the Second Claim for Relief for Breach of the Lease Agreement, LEAF alleges that, under a Guaranty executed by Dines to secure payment of Brogan's indebtedness under the Lease Agreement, Dines owes LEAF the sum of $87,681.24, plus interest

at the rate of 15% per annum, late fees, reasonable collection costs, and attorney's fees. Finally, in the Third Claim for Relief for Replevin, LEAF alleges its immediate right to possession of the Equipment and seeks an Order of Possession with respect to the Equipment.

On January 23, 2009, Defendants filed an Answer and affirmative defenses, including that LEAF's Complaint is time-barred, that LEAF failed to take reasonable steps to mitigate its damages, and that LEAF has waived the personal guaranty of Dines by virtue of its alleged impairment of the value of the Equipment.

On April 17, 2009, LEAF filed the instant Motion for Summary Judgment and a Memorandum in Support, seeking summary judgment on the First and Second Claims for Relief in its Complaint and requesting that the Third Claim for Relief be dismissed without prejudice. Defendants filed a Response on May 18, 2009, and LEAF filed a Reply on June 2, 2009.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary

2

judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided

3

in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

### MATERIAL FACTS

On or about December 20, 2007, Brogan, as lessee, and Direct Capital Corporation ("Direct"), as lessor, executed the Lease Agreement. Under this Agreement, Brogan agreed to make a monthly "Rental Payment Amount" of $1,719.24 for a "Rental Term" of sixty months (for a total of $103,154.40) in exchange for the lease of the Equipment.

The "Default and Remedies" provision of the Agreement provides: "If (a) Lessee fails to make any payment required pursuant to this Lease when due, . . . or (e) Lessee attempts or actually repudiates or revokes this agreement or any other agreement with Lessor or its assignees, then

4

Lessee will be in default." Pl. Mot., Exh. 1-A, ¶ 22. The section further establishes that, in the event of a default,

> Lessor, with or without notice to Lessee, shall have the right to exercise any one or more of the following remedies, concurrently or separately, and without any election of remedies being deemed to have been made. Lessor may . . . (c) *sue for and recover from Lessee any and all amounts due under this Lease including the Stipulated Lease Value of this Lease*, . . . (e) require the Lessee to assemble and make the Equipment available to the Lessor at a location determined by the Lessor, . . . (h) refer this Lease to an attorney for collection; or (i) pursue any other remedy available to the Lessor under any agreement or applicable law. Lessee agrees to pay all costs of collection including, but not limited to, costs of repossession, attorney's costs including attorney's fees, actual court costs, and any other expenses associated with the collection efforts . . . . Lessor may use any of the remedies available under Article 2A of the Uniform Commercial Code as enacted in the State of New Hampshire or any other law.

*Id.* (emphasis added).

The calculation for determining the "Stipulated Lease Value" referred to in subpart (c) is set forth under "Loss and Damage" and provides:

> Stipulated Lease Value equals the sum of: 1) all amounts due by Lessee to Lessor under this Lease up to the date of the loss or termination including, but not limited to, all Rental Payment Amounts, all taxes, all service charges and interest on delinquent payments and any cost of collections owed pursuant to sections 22 and 23, 2) the accelerated balance of the total amounts due for the remaining term of this Lease discounted monthly to present value at a discount rate of 4% per annum from the date each such installment is due to the date of loss or termination, 3) all other amounts due by Lessee to Lessor including interest and service charges through the date of full payment to the Lessor of all Lessee obligations and 4) the Lessor's estimate as of the time this Lease was entered into of Lessor's residual interest in the Equipment discounted to present value at a discount rate of 4% per annum to the date of loss or termination.

*Id*. at ¶ 15. In addition to these remedies, the Agreement allows for the assessment of service charges, interest, and fees in the event Brogan, as lessee, fails to make a payment:

> If Lessee shall fail to make any payment required by the Lease within (3) three days of the due date thereof, Lessee shall pay to Lessor a service charge of 15% of the amount due, provided, however, that not more than one such service charge shall be

> made on any delinquent payment, regardless of the length of the delinquency. In addition to the foregoing service charge, Lessee shall pay to Lessor any actual additional expenses incurred by Lessor in collection efforts . . . . Lessee shall pay to Lessor interest on any delinquent payment or amount due under this Lease from the due date thereof until paid, at the lesser of (A) the maximum rate of interest allowed by law or (B) 15% per annum.

Pl. Mot., Exh. 1-A, ¶ 21.

As additional inducement for Direct to enter into the Agreement, Dines simultaneously executed a Guaranty in which he "jointly and severally, unconditionally personally guarantees" that Brogan "will make all payments and meet all the obligations under the Agreement." *Id*., p. 1. The Guaranty provides that "[i]t is not necessary for us to proceed first against the customer before enforcing this Guaranty." *Id*.

On January 1, 2008, the Equipment identified in the Agreement was delivered to Brogan. The following day, January 2, 2008, Direct executed a Lease Assignment and Security Agreement ("Assignment") in which Direct transfers and assigns all of its rights and remedies under the Agreement to LEAF. In this Assignment, Direct grants LEAF a security interest in the Equipment, which LEAF agrees to release upon payment by Brogan of all monetary obligations under the Agreement.[1]

Brogan has not made a payment since September 1, 2008.

On September 13, 2008, Dines "advised Mr. Nestor of Leaf Funding that Brogan was surrendering the leased property and that he should immediately arrange to pick up their equipment." Def. Resp., Exh. A, ¶ 4 (Dines' Aff.). Approximately two weeks later, on September 26, 2008,

---

[1] Given that Direct assigned all of its rights as lessor to LEAF, all references to the "lessor" in this Order are references to LEAF and all references to LEAF are in its capacity as lessor.

Dines contacted LEAF again to advise that the "leased property needed to be picked up as soon as possible." *Id.* at ¶ 5.

A suit had been filed in Lake County, Indiana, against Brogan, by Sargent Electric Company, and, on October 23, 2008, the court in that case issued an Order of Prejudgment Attachment that provides, in relevant part:

> Brogan Pharmaceuticals, Inc. . . . [is] enjoined from the following: selling, attempting to sell, wasting, or materially altering, via any method, tangible or intangible property, including real and personal property, subject to execution under the law, including but not limited to any and all equipment, machinery, manufacturing plants, clean rooms, laboratories, support rooms, and financial accounts, . . . .

*See* docket date October 23, 2008, *Sargent Elec. Co. v. Brogan Pharms., Inc.*, No. 45C01-0804-PL-00064 (Lake Cir. Ct. 2008). The order further directs the Sheriff to seize all of the above identified property and to hold it until final judgment is rendered in that matter. In his Affidavit, Dines states that he notified LEAF a third time to pick up the Equipment on October 24, 2008. He also states that "in the meantime, Brogan's landlord . . . unilaterally . . . changed the locks at the Brogan plant, which is where the leased property was located." Def. Resp., Exh. A, ¶ 7 (Dines' Aff.). LEAF is not a party to that state court action. LEAF has contacted the parties in that action, but the parties have been unwilling to aid LEAF in the retrieval of the Equipment in light of the Order of Prejudgment Attachment. LEAF has been unable to repossess the Equipment.

## ANALYSIS

LEAF seeks summary judgment in its favor on its claims of breach of the Lease Agreement against Brogan and Dines. After first finding both Brogan and Dines liable for the breach, the Court turns to the damages calculation and then finally to the dismissal of LEAF's claim for replevin.

7

### A. Breach of the Lease Agreement

In the First and Second Claims of its Complaint respectively, LEAF alleges that Brogan breached the Lease Agreement and is liable for the damages flowing from that breach and that Dines, as guarantor, is also liable for those damages. LEAF seeks summary judgment on both claims, and neither Defendant has disputed Brogan's liability or the amount of damages sought by LEAF. The only substantive argument in the Defendants' joint response brief is the assertion of the impairment of collateral defense on behalf of Dines as guarantor. The Court considers the liability of each Defendant and the appropriate calculation of damages.

*1. Liability of Brogan Pharmaceuticals*

A lease is a type of contract, and the elements of a breach of contract claim are the existence of a contract, the defendant's breach of the contract, and damages. *Indiana Bureau of Motor Vehicles v. Ash*, 895 N.E.2d 359, 365 (Ind. Ct. App. 2008) (quoting *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.*, 814 N.E.2d 649, 655 (Ind. Ct. App. 2004)).[2] As noted, in response to summary judgment, Defendants do not dispute the existence of the contract in the form of the Lease Agreement, Brogan's breach of the Lease Agreement, or the amount of damages requested by LEAF.

The instant Lease Agreement and subsequent Assignment required Brogan to make sixty monthly payments of $1,719.24 to LEAF (for a total of $103,154.40) in exchange for the lease of

---

[2] The Lease Agreement provides that it will be interpreted under the laws of the state of the lessor's or, if assigned, the assignee's principal place of business, which in this case is Pennsylvania, the principal place of business of LEAF. Pl. Br., Exh. 1-A, ¶ 6. However, all the parties cite Indiana law in the briefs on the instant motion, and no party has invoked Pennsylvania law or raised a choice of law issue. Therefore, the parties have waived any objection to the choice of law, and the Court will apply the substantive law of the state of Indiana. *See ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995) (recognizing that, "[w]here neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law."); *see also Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1231 n.1 (7th Cir. 1985) (noting that acquiescence to the application of a given forum's law amounts to waiver of any objection to such choice).

the Equipment.[3] As for breach, the Agreement provides that Brogan is in default if it "fails to make a payment required pursuant to this Lease when due." Pl. Mot., Exh. 1-A, ¶ 22. Brogan's last payment was made September 1, 2008, and, thus, Brogan was in default for failing to make payments under the Lease when it failed to make the October 1, 2008 payment and all subsequent missed payments. In addition, Brogan is also in default under the Lease Agreement if it "attempts or actually repudiates or revokes this agreement." *Id*. On two occasions prior to the entry of the state court Order of Prejudgment Attachment, Dines, on behalf of Brogan, contacted LEAF and asked LEAF to retrieve the Equipment. Under the Agreement, LEAF was under no obligation to retrieve the Equipment at Brogan's request. Although not asserted by LEAF, this conduct could be considered an attempted or actual repudiation of the agreement that would entitle LEAF to declare Brogan in default. Accordingly, there is no genuine issue of material fact concerning Brogan's liability for its breach of the Lease Agreement, and summary judgment in favor of LEAF against Brogan on liability is granted.

Although Defendants assert a number of Affirmative Defenses in their Answer, including that LEAF's action is time barred and that LEAF failed to mitigate its damages, neither Defendant has asserted any defense to Brogan's liability in response to LEAF's motion for summary judgment, and, thus, the affirmative defenses as to Brogan's liability are waived. *See The Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 796 F. Supp. 1164, 1167 (S.D. Ind. 1992) ("A summary judgment on the issue of liability encompasses all affirmative defenses and implicitly challenges the non-movant to

---

[3] The Court recognizes that the contract at issue is styled an "Equipment Lease Agreement" and that the terms of the Agreement provide that it is the intent of both parties to create a "Finance Lease" and that "this Lease constitutes a true lease and not a sale of the Equipment or a loan of any kind." Pl. Mot., Exh. 1-A, ¶¶ 3, 14; *see* Ind. Code § 26-1-2.1-103(g) (finance lease). As neither Brogan nor Dines has asserted any argument that the contract should be construed as a disguised security interest, *see* Ind. Code § 26-1-1-201(37), rather than a lease, the Court leaves that determination for another forum.

9

establish a basis for finding that the defenses are both applicable and supported by sufficient facts."); *see also Ramada Franchise Sys., Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, No. 02 C 1941, 2005 WL 435263, *10 (N.D. Ill. Feb. 16, 2005).

However, out of an abundance of caution, the Court briefly analyzes the two affirmative defenses that may bear on Brogan's liability and finds that neither is tenable. First, Defendants assert in their Answer the affirmative defense that LEAF's remedy is time barred. However, Indiana Code § 26-1-2.1-506(1)-(2) provides that an action for default under a lease contract must be brought within four years of when it accrued unless shortened to a period of no less than a year by the agreement itself. The Lease Agreement in this case does not shorten the statute of limitations. Brogan breached the agreement either on September 13, 2008, when Dines, as president of Brogan, first contacted LEAF and asked LEAF to pick up the equipment, or shortly after October 1, 2008, when Brogan failed to make its monthly lease payment. As the Complaint was filed on December 1, 2008, less than three months from either possible default date, this defense must fail. Second, the Answer asserts that LEAF failed to take reasonable steps to mitigate its damages. This defense requires a defendant to prove "that the non-breaching party has not used reasonable diligence to mitigate its damages." *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 507 (Ind. Ct. App. 2007) (citing *Ind. Indus., Inc. v. Wedge Prods., Inc.*, 430 N.E.2d 419, 428 (Ind. Ct. App. 1982)). In this case, the Defendants have not alleged any injury beyond LEAF's failure to repossess the Equipment, which LEAF did not have an obligation to do under the Lease Agreement. Moreover, if LEAF wished to repossess the equipment, Brogan was required by the Lease Agreement to repackage the Equipment and deliver it to a location of LEAF's choosing, which is consistent with Indiana's adoption of the Uniform Commercial Code:

> After a default by the lessee under the lease contract . . ., the lessor has the right to take possession of the goods. If the lease contract so provides, the lessor may require the lessee to assemble the goods and make them available to the lessor at a place to be designated by the lessor which is reasonably convenient to both parties.

Ind. Code § 26-1-2.1-525(2). The evidence of record does not support a defense of failure to mitigate damages.

*2. Liability of Brett Dines as Guarantor*

In support of summary judgment against Dines, LEAF argues that Dines, as guarantor, is liable for the damages flowing from Brogan's default. A guaranty is a conditional promise made by a party to answer for the debt or default of another only if the principal debtor fails to pay. *TW Gen. Contracting Servs. v. First Farmers Bank & Trust*, 904 N.E.2d 1285, 1288 (Ind. Ct. App. 2009). At the time Brogan executed the Lease Agreement, Dines also signed a Guaranty in which he personally guaranteed Brogan's payments and obligations under the Agreement. Dines therein agreed that, in the event of Brogan's default, he could be held jointly and severally and unconditionally responsible for those payments and obligations. As set forth above, Brogan has defaulted on the Agreement by failing to make any payments after September 1, 2008. Therefore, Dines is liable under the Guaranty to LEAF for Brogan's payments and obligations.

In response to the motion for summary judgment, Dines' only asserted defense is that LEAF impaired the collateral when it failed to take timely possession of and to promptly liquidate the leased property after Dines made two calls to LEAF requesting that LEAF make arrangements to come and retrieve the Equipment. Thus, Dines argues that there is a genuine issue of material fact as to the amount, if any, that Dines as guarantor owes to LEAF.

"The guarantor of a debt may seek to avoid personal liability in a suit by a creditor by asserting the impairment of collateral defense." *Bartle v. Health Quest Realty VII*, 768 N.E.2d 912,

922 (Ind. Ct. App. 2002) (citing *Farmers Loan & Trust Co. v. Letsinger*, 652 N.E.2d 63, 66 (Ind. 1995)). "Pursuant to this defense, the guarantor's liability will be discharged if the facts establish that the creditor's conduct unjustifiably impaired the collateral securing the debt." *Id.* (citing *Alani v. Monroe County Bank*, 712 N.E.2d 19, 21 (Ind. Ct. App. 1999)). The underlying purpose of the impairment of collateral defense is to prevent the guarantor from being exposed to personal liability beyond that which was expected at the time the parties entered into the contract secured by the collateral. *See Farmers*, 652 N.E.2d at 66-67; *Alani*, 712 N.E.2d at 21, 22 (citing *White v. Household Fin. Corp.*, 302 N.E.2d 828, 835 (Ind. App. 1973)).[4]

As an initial matter, the state court Order of Prejudgment Attachment that is presently preventing LEAF from repossessing the Equipment presumably has not impaired the value of the Equipment (other than any effect the passage of time may have on the value of the Equipment) but rather has temporary impaired the ability to access the Equipment. The outcome of those state court proceedings and the priority of interest in the Equipment assigned to the various parties will ultimately determine the practical extent of the impairment of the collateral, if any, to the parties in the instant dispute. "When a creditor releases or negligently fails to protect security put in his

---

[4] The Indiana Supreme Court has articulated two reasons underpinning the principal that a guarantor may interpose the defense that the creditor impaired the collateral:
> First, the guarantor at the time of making a guaranty may make the judgment that the collateral for the loan to the guarantor's principal will be sufficient to cover the debt. If the creditor impairs the collateral, and the guarantor has not consented to release or other impairment of the collateral, the guarantor may become exposed to liability beyond the guarantor's expectation at the time the parties entered into the contract.
> . . . .
> Second, a guarantor who satisfies the principal debtor's obligation to the creditor generally steps into the shoes of the creditor, becoming subrogated to the creditor's claim and assuming both the creditor' rights and duties. Thus, when a creditor unjustifiably impairs the collateral securing a guarantied[sic] loan, it impairs the guarantor's recourse against the guarantor's principal, which recourse the guarantor would have understood itself to have at the time of contracting to guaranty the principal's debt.

*Farmers Loan & Trust Co. v. Letsinger*, 652 N.E.2d 63, 66-67 (Ind. 1995) (internal citations and footnotes omitted).

possession by the principal debtor, the surety is released to the extent of the value of the security so impaired." *Cole v. Loman & Gray, Inc.,* 713 N.E.2d 901, 904, 905 (Ind. Ct. App. 1999) (quoting *White v. Household Fin. Corp.*, 302 N.E.2d 828, 832 (Ind. Ct. App. 1973)) (rejecting, in that case, the *strictissimi juris* approach to impairment of collateral, which allows for complete discharge of any liability based on an impairment of the collateral, in favor of the pro tanto approach that measures the amount of impairment at the time of default). Dines has not established, or attempted to establish, the amount of the impairment of the collateral, if any, which is his burden. *See Rempa v. LaPorte Prod. Credit Ass'n*, 444 N.E.2d 308, 314 (Ind. Ct. App. 1983) (finding that offering no proof of damages to the collateral represents a failure to establish a necessary element of the defense); *see also* Ind. Code § 26-1-3.1-605(e) ("The burden of proving impairment is on the party asserting discharge").

Moreover, the defense of impairment of the collateral discharges a guarantor's liability when the "creditor's conduct unjustifiably impaired the collateral securing the debt." *Cole*, 713 N.E.2d at 904 (citing *Wisconics Eng'g, Inc. v. Fisher*, 466 N.E.2d 745, 767 (Ind. Ct. App. 1984)); *see also Farmers*, 652 N.E.2d at 66 ("Guarantors and sureties are exonerated if the creditor by any act, done without their consent, alters the obligation of the principal in any respect or impairs or suspends the remedy for its enforcement.") (quoting *Weed Sewing Mach. Co. v. Winchel*, 7 N.E. 881 (1886)); *Williams v. Lafayette Prod. Credit Ass'n*, 508 N.E.2d 579, 583 (Ind. Ct. App. 1987) (holding that when collateral is left in the possession of the debtor, part of the risk assumed by the guarantor is that the debtor's actions may impair the collateral and any such harm to the collateral by the debtor cannot be attributed to the creditor without some improper act by the creditor); *Hedrick v. First Nat. Band Trust Co.*, 482 N.E.2d 1146, 1149 (Ind. Ct. App. 1985) (finding, in dicta, that the decrease in

13

value of the collateral during the pendency of the debtor's bankruptcy proceeding could not be attributed to the creditor bank when the creditor bank had not acted).

In this case, the present inaccessibility of the collateral is not the result of action taken or caused by LEAF but rather is the result of the lawsuit related to the debts of Brogan filed in Lake County, Indiana, in which the court issued an Order of Prejudgment Attachment on October 23, 2008. *See Sargent Elec. Co. v. Brogan Pharms., Inc.*, No. 45C01-0804-PL-00064 (Lake Cir. Ct. 2008). Dines made his first two communications to LEAF to make arrangements to pick up the Equipment on September 13, 2008, and September 26, 2008. On October 23, 2008, the state court issued the Order of Prejudgment Attachment, and LEAF was no longer able to repossess the Equipment. Dines contacted LEAF a third time on October 24, 2008–the day after the Order of Prejudgment Attachment had issued. LEAF is not currently a party to that action for money damages, and, to date, LEAF has been unable to obtain the assistance of the parties to that action in retrieving the Equipment.

The Lease Agreement specifically provides that it is Brogan's obligation to package the Equipment at the termination of the lease, whether through completion or default, and to deliver the packaged Equipment to a location of LEAF's choosing; LEAF did not have a duty under the Agreement to retrieve the Equipment at Brogan's request. *See also* Ind. Code § 26-1-3.1-605(g) (2009).[5] Contacting LEAF and requesting that LEAF make arrangements to retrieve the Equipment

---

[5] Section 26-1-3.1-605(g) provides:
    Under subsection (e) or (f), impairing value of an interest in collateral includes:
    (1) failure to obtain or maintain perfection or recordation of the interest in collateral;
    (2) release of collateral without substitution of collateral of equal value;
    (3) failure to perform a duty to preserve the value of collateral owed, under IC 26-1-9.1 or other law, to a debtor or surety or other person secondarily liable; or
    (4) failure to comply with applicable law in disposing of collateral.
Ind. Code § 26-1-3.1-605(g).

does not satisfy Brogan's duty to deliver the Equipment to LEAF and does not impute to LEAF responsibility for the current status of the Equipment. The Lease Agreement also provides that LEAF was not under any obligation to take action against Brogan first prior to filing a suit against Dines, as the Guaranty provides that "[i]t is not necessary for us to proceed first against the customer before enforcing this Guaranty." Pl. Br., Exh. 1-A, p. 1.

Therefore, the Court finds that Dines' asserted defense of impairment of the collateral fails and that he remains jointly and severally liable to LEAF for the damages resulting from Brogan's breach of the Lease Agreement. Summary judgment in favor of LEAF against Dines on liability is granted.

*3. Damages*

a. Amounts due and accelerated payments

In both its memorandum in support of summary judgment and its reply brief, LEAF requests damages against Brogan and Dines, jointly and severally, in the amount of "$87,681.24, plus interest at the rate of 15% per annum, late fees, reasonable collection costs, and attorney's fees." Pl. Br., p. 10. The amount of $87,681.24 is the accelerated balance of the fifty-one remaining monthly payments of $1,719.24 under the Lease Agreement. Defendants have not opposed the requested amount of $87,681.24 in damages nor have Defendants opposed the method of calculation. However, LEAF does not reference any provision in the Lease Agreement or in the law to support this calculation of damages, and the sum requested by LEAF does not account for a reduction to present value of the accelerated payments.

The "Default and Remedies" provision of the Lease Agreements provides that one of LEAF's remedies is to "sue for and recover from Lessee any and all amounts due under this Lease

15

including the Stipulated Lease Value of this Lease." Pl. Br., Exh. 1-A, ¶ 22. The four-part formula for calculating the "Stipulated Lease Value" is set forth earlier in the Lease Agreement at paragraph 15 and includes a calculation for the reduction to present value of the accelerated balance of the remaining payments at a rate of four percent per year: "the accelerated balance of the total amounts due for the remaining term of this Lease discounted monthly to present value at a discount rate of 4% per annum from the date each such installment is due to the date of loss or termination." *Id*. at ¶ 15. LEAF references this present value calculation at the four percent rate in both its memorandum in support of summary judgment and its reply brief yet does not apply the calculation to its final request for damages. *Compare* Pl. Mot., § II, ¶ 2; Pl. Mot., Exh. 1, ¶ 4 (Grant Aff.); Pl. Reply, § II, ¶ 2; and Pl. Reply, § III.A, ¶ 2 (each referencing the present value discount); *with* Compl., ¶ 13 & 15; Pl. Mot., § I, ¶ 2; Pl. Mot., Exh. A, ¶ 6; and Pl. Reply, § 4, ¶ 1 (each requesting full payment without reduction to present value).

Accordingly, the Court grants summary judgment on damages in favor of LEAF and against both Brogan and Dines in an amount to be determined following further briefing by the parties on the calculation of damages.

b. Prejudgment interest

In its motion, LEAF requests prejudgment interest at the rate of 15% per annum from and after November 1, 2008. In a diversity case, prejudgment interest is governed by state law, and Indiana courts have explained that prejudgment interest is part of the compensatory award necessary to make the plaintiff whole. *See Travelers Ins. Co. v. Transp. Ins. Co.*, 846 F.2d 1048, 1051-52 (7th Cir. 1988); *Bank One, Nat. Ass'n. v. Surber*, 899 N.E.2d 693, 705 (Ind. Ct. App. 2009). Under Indiana law, damages in the form of prejudgment interest are proper in a contract action when the

amount of the claim "rests upon a simple calculation and the terms of the contract make such a claim ascertainable" and when the trial court does not have to exercise any discretion in computing the award. *Troutwine Estates Dev. Co., LLC v. Comsub Design and Eng'g, Inc.*, 854 N.E.2d 890 (Ind. Ct. App. 2006); *see also Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 607 (7th Cir. 1985). Damages are ascertainable when measurement is a matter of mathematical computation. *Bank One,* 899 N.E.2d at 705. Because the damages for the breach of the instant Lease Agreement are readily calculable under the terms of the agreement, prejudgment interest is appropriate.

As for the rate of prejudgment interest, Paragraph 21 of the Agreement allows for interest based on monies already owed, but not yet paid, at the lesser of the maximum rate of interest allowed by law or 15% per annum. Under Indiana law, the prejudgment interest rate is set at 8% only when the parties have not agreed on the rate of interest. *See* Ind. Code § 24-4.6-1-102. As Indiana Courts have allowed prejudgment interest rates higher than the 15% sought by LEAF and provided for in the Lease Agreement, the Court finds that the contractually agreed upon prejudgment interest rate of 15% in paragraph 21 of the Lease Agreement is applicable. *See, e.g.*, *Roy A. Miller & Sons, Inc. v. Indus. Hardwoods Corp.*, 775 N.E.2d 1168, 1174 (Ind. Ct. App. 2002) (awarding the 30% service charge rate provided on the invoices sent to the contractor rather than the eight percent statutory rate provided for in Indiana Code § 24-4.6-1-103)); *White River Conservancy Dist. v. Commonwealth Eng'rs, Inc.*, 575 N.E.2d 1011, 1017 (Ind. Ct. App. 1991) (upholding a contractual prejudgment interest rate of 18% because the evidence did not show that the rate was unconscionable at the time it was agreed upon under Indiana Code § 26-1-2-302); *Weisman v. Hopf-Himsel, Inc.*, 535 N.E.2d 1222, 1234 (Ind. Ct. App. 1989) (affirming the trial court's award

of 18% prejudgment interest). Therefore, LEAF is entitled to a prejudgment interest rate of 15% on the amounts currently due to it under the Agreement.

c. Attorney's fees

LEAF also requests attorney's fees incurred as a result of Brogan's default under the Lease Agreement. Under Indiana law, when a contract allows for the recovery of reasonable attorney's fees, the agreement to pay attorney's fees will be enforced according to its terms unless it is contrary to law or public policy. *Reuille v. E.E. Brandenberger Const., Inc.* 888 N.E.2d 770, 771 (Ind. 2008) (*citing Carter-McMahon v. McMahon*, 815 N.E.2d 170, 178 (Ind. Ct. App. 2004)); *see also Kikkert v. Krumm,* 474 N.E.2d 503, 505 (Ind. 1985). In the instant case, paragraph 22 of the Lease Agreement allows LEAF to recover from Brogan "attorney's costs including attorney fees" related to LEAF's collection efforts resulting from a breach by Brogan. Neither Brogan nor Dines has offered any opposition to the imposition of attorney's fees. Accordingly, the Court awards LEAF its reasonable attorney's fees and orders LEAF to submit an affidavit to the Court establishing the requested amount of attorney's fees once the Court has entered an order on the amount of damages.

d. Conclusion on damages

Accordingly, the Court orders the parties to confer and to attempt to agree on the calculation of the amount of damages Brogan and Dines now owe to LEAF and to file with the Court a joint agreed statement of damages. However, if the parties are unable to agree on the calculation, then LEAF is ordered to file a request for damages with its proposed calculation, to which Defendants may file a response, and LEAF may file a reply.

The calculation, whether agreed to or proposed separately, shall include (1) both the method and the legal support for the method of calculating the amount due under the Lease Agreement as

18

a result of Brogan's failure to make any monthly payments since September 1, 2008, which LEAF is currently requesting in the amount of $87,681.24; (2) the calculation of the 15% per annum prejudgment interest; (3) an itemization of late fees; and (4) an itemization of reasonable collection costs. The amount of reasonable attorney's fees will be briefed separately following the Court's determination of the amount of damages.

### C. Dismissal of Count III

In the Motion for Summary Judgment, LEAF requests that the Court dismiss its Third Claim for replevin of the Equipment. The Lake County Circuit Court in *Sargent Electric Company v. Brogan Pharmaceuticals, Inc.*, Cause No. 45C01-094-PL-00064 issued an Order of Prejudgment Attachment, ordering that all personal property subject to execution be seized by the Sheriff. As a result, Brogan is not in a position to return the Equipment to LEAF. LEAF also represents that it has been unsuccessful in it efforts to obtain the cooperation of the parties to the state court litigation in repossessing the Equipment. Anticipating the potential invocation of *Younger* abstention, LEAF represents that it intends to pursue acquisition of the Equipment in the Lake County action directly and asks the Court to dismiss without prejudice its claim for replevin. Defendants have not opposed this request. Accordingly, LEAF's Third Claim is dismissed without prejudice.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Plaintiff LEAF's Motion for Summary Judgment [DE 17], granting summary judgment in favor of LEAF and against Brogan and Dines, jointly and severally, on liability and on damages in an amount yet to be determined.

The Court **ORDERS** that on or before **August 17, 2009**, either (1) the parties shall **FILE** a Joint Agreed Statement of Damages setting forth the agreed calculation of damages or, if unable

to agree on the calculation of damages, (2) LEAF shall **FILE** an individual Request for Damages. If LEAF files an individual Request for Damages, Defendants shall have up to and including **August 31, 2009**, in which to file a response, and LEAF shall have up to and including **September 8, 2009**, in which to file a reply.

The Court **ORDERS** that a joint or individual calculation of damages must comply with Part B.3.d of this Order.

The Court further **ORDERS** that LEAF's Third Claim for Relief is **DISMISSED without prejudice**.

SO ORDERED this 27th day of July, 2009.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record